UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

PATRICK A. JONES,                    )
                                     )
          Plaintiff,                 )          Civil No. 10-88-GFVT
                                     )
v.                                   )
                                     )        **MEMORANDUM OPINION**
M. DANIELS, et al.,                  )            **& ORDER**
                                     )
          Defendants.                )
                                     )

          ***** ***** ***** *****

     Patrick A. Jones is an inmate confined in the United States Penitentiary-McCreary

("USP-McCreary") located in Pine Knot, Kentucky.  Jones has filed a *pro se* civil rights action

under 28 U.S.C. § 1331, pursuant to the doctrine announced in *Bivens v. Six Unknown Fed.*

*Narcotics Agents*, 403 U.S. 388 (1971).  [R. 2.]

     This matter is before the Court for initial screening.  Because this is a civil action that is

being pursued by a prisoner against government officers, the Court must screen the Complaint

under 28 U.S.C. § 1915A.  This section requires the Court to dismiss any claims that are

frivolous or malicious, fail to state a claim upon which relief may be granted, or seek monetary

relief from defendants who are immune from such relief.  28 U.S.C. §§ 1915(e) & 1915A.

     *Pro se* complaints are held to less stringent standards than those drafted by attorneys.  *See*

*Wagenknect v. United States*, 533 F.3d 412, 415 (6th Cir. 2008).  Moreover, at the screening

phase, the allegations in a *pro se* complaint must be taken as true and construed in favor of the

plaintiff.  *See Thomas v. Eby*, 481 F.3d 434, 437 (6th Cir. 2007).

     On April 5, 2010, the Court entered a Deficiency Order instructing Jones either to pay the

filing fee or to provide certain standard information regarding his federal inmate account within thirty days if he intended to proceed *in forma pauperis*. [R. 5.] Apparently, on or about April 16, 2010, Jones filed a Petition for Writ of Mandamus with the Sixth Circuit Court of Appeals protesting the entry of the Deficiency Order, asking the appellate court to address his specific constitutional claims, and seeking injunctive relief from that Court.[1]

As of the date of entry of today's Order, Jones has neither paid the $350.00 filing fee nor supplied the necessary financial information. Nevertheless, the Court will address the merits of Jones's many claims.

## I.

Jones has filed a twenty-page, typewritten Complaint to which he has attached over one hundred and twenty (120) pages of exhibits. Summarized, his claims are as follows:

(1)  Jones challenges his June 2008 disciplinary conviction for possessing postage stamps in violation of BOP Code No. 305.

(2)  Jones challenges the BOP's newly implemented policy, Program Statement 5265.13, which requires that a mailing label be affixed to all inmate outgoing correspondence. Jones claims that the policy restricts his ability and his right to send mail and access the courts.

(3)  Jones complains that because researching legal matters on the prison's computer system and communicating with other persons outside of the prison requires registration in the TRULINCS system, and because he objects to the entire TRULINCS system on various grounds,

---

[1] Because this activity was neither assigned a specific docket entry by the Clerk of the Court, nor docketed as actual activity in the record, the Court was not made immediately aware of Jones's April 2010 filing in the Sixth Circuit.

he is being denied access to the courts.

(4)        Jones alleges that Officer M. Daniels, USP-McCreary staff member, retaliated against him in January of 2010 by issuing an Incident Report charging him with refusing to obey an order, to wit, failing to affix TRULINCS-approved mailing labels to his outgoing mail.

(5)        Jones alleges that on June 30, 2009, USP-McCreary staff improperly rejected photographs someone had attempted to mail to him.

Jones seeks compensatory and punitive damages from each defendant. He has also asks this Court to afford him emergency injunctive relief, directing USP-McCreary officials to refrain from further enforcement of the mailing label requirement and other security measures contained in Program Statement 5265.13.

For the reasons set forth herein, Jones's First Amendment claims challenging various aspects of United States Bureau of Prisons ("BOP") Program Statement 5265.13 and his First and/or Firth Amendment claims challenging two disciplinary convictions will be dismissed with prejudice. Jones's Fifth Amendment claim challenging the June 30, 2009 confiscation of photographs from his incoming mail, and their return to the sender, will be dismissed without prejudice. By separate Order the Court will address Jones's motion seeking a temporary restraining order [R. 4].

## II.

### A.

On February 19, 2009, the BOP implemented Program Statement 5265.13, *Trust Fund Limited Inmate Computer System* ("TRULINCS"). This system allows an inmate to send or receive electronic, computer-based, written messages to and from family members and other

persons who are on the inmate's approved electronic message contact list. TRULINCS

specifically requires federal inmates to affix mailing labels on outgoing mail, and it states that

any non-compliant mail will be returned to the inmate. The provision relating to mailing labels

reads:

> c. **Outgoing Mail Labels**. Ordinarily, inmates are required to place a
> TRULINCS-generated mailing label on all outgoing postal mail. The Warden
> may exempt inmates from this requirement if he/she determines that an inmate has
> a physical or mental incapacity, or other extraordinary circumstances that prevents
> him/her from using the TRULINCS terminal, or the inmate poses special security
> concerns prohibiting access to TRULINCS terminals.
>
> The Warden may exempt inmates housed in SHU or other areas of the institution
> in which there are special security concerns that limit regular access to
> TRULINCS.
>
> If an inmate fails to place the TRULINCS-generated label on outgoing postal
> mail, the mail is returned to the inmate for proper preparation, in the same way
> outgoing mail is returned for failure to follow other processing requirements, e.g.
> lack of return address, etc.
>
> Mailing labels are only placed on outgoing postal mail. Inmates who use mailing
> labels for other than their intended purpose may be subject to disciplinary action
> for misuse of Government property.
>
> Ordinarily, inmates are limited to printing no more than 10 labels per day. An
> inmate may be authorized to print labels in excess of these limits only upon
> approval of the Warden or designee.

*See* Program Statement 5265.13, Attachment to Complaint, [R. 2-2, p. 14.]

On August 27, 2009, as directed by Program Statement 5265.13, USP-McCreary officials

issued an institutional supplement, entitled "MCR Inmate Bulletin." [*See* R. 2-3, p. 19.] The

Inmate Bulletin specifically advised all USP-McCreary Inmates as follows:

> **MAILING LABELS**: Effective September 21, 2009, mailing labels will be
> required on all outgoing correspondence from inmates housed in the general
> population. Return address labels (those which identify the inmate, Reg. No.,

institution) are NOT permitted to be printed on the TRULINCS system. The mail
room will NOT process inmate mail which does not contain the appropriate
labeling.

[*Id*.]

On January 29, 2010, the following supplemental MCR Inmate Bulletin was issued:

**MAILING LABELS**:  An inmate bulletin posted on August 27, 2009, detailed
the implementation of the use of mailing labels, with an effective date of
September 21, 2009.  Mailing labels are required on all outgoing correspondence
from inmates housed in the general population, to include legal mail. Return
address labels (those which identify the inmate, Reg. No., institution) are NOT
permitted to be printed on the TRULINCS system.  The mail room will NOT
process inmate mail which does not comply with these procedures.

[R. 2-3, p. 29.]

Jones alleges that on December 22, 2009, he attempted to mail one piece of outgoing

mail, but that the mail-room processing clerk, Officer T. Doolin, rejected the proffered item

because it lacked the TRULINCS mailing labels.  [*See* Complaint, R. 2, p. 10 , ¶ 41.]  Jones

states that he explained to Doolin that he did not have access to TRULINCS mailing labels

"because he do [sic] not consent or agree with the stipulations and requirements to participate in

the TRULINCS program and do [sic] not want to give up his rights to have access and use the

TRULINCS system; therefore, plaintiff have [sic] no other option available to him."  [*Id*.]

According to Jones, Doolin replied that he did not care and that either Jones would have to use

the TRULINCS mailing labels or his mail would not go out.  [*Id*.]

Jones alleges that on numerous occasions between December 22, 2009, and January 11,

2010, he attempted to mail other pieces of mail which contained the proper amount of postage

but lacked the TRULINCS mailing labels.  He claims that on each occasion, Officers Doolin, J.

Cornelius, and M. Daniels rejected his mail for the same reason: lack of TRULINCS mailing

labels.  They informed Jones that they did not care why Jones failed to provide the mailing labels in accordance with BOP policy.  [*See* Complaint, R. 2, pp. 10-18, ¶¶ 41-60.]  Jones alleges that these pieces of mail were  returned to him with notices advising him, in various terms, that labels were required for all outgoing mail.  [*Id*.]

Jones appears to have partially exhausted these claims through the BOP administrative remedy system.  *See* 28 C.F.R. § 542.10-19.  Between October 5, 2009, and February 9, 2010, Jones filed four BP-9 Requests for Administrative Remedy with Warden Eric Wilson.  [*See* R. 2-1 pp.17, 20, and 23; and R. 2-3, p. 13.]  Wilson denied all of the Requests.  Summarized, his denials were based on the following  grounds:  (1)  the address labels provided through the TRULINCS system ensure clearly printed and legible addresses of outgoing mail and thus increase the accuracy and efficiency of mail handling; (2) the labels diminish the incidents of incorrect zip codes and poor penmanship which delay handling; (3) ten free labels per day could be printed; and (4) there were no plans to alter or discontinue the mailing label feature of the TRULINCS system.  [*Id*.]

Jones admits that he did not pursue the next steps, the appeal to the BOP Mid Atlantic regional Office (via a BP-10 appeal) and the BOP central Office (via a BP-11 appeal).  [R. 2, pp. 5-7.]  Jones argues that because he refuses to participate in the TRULINCS system, he was, and is, unable to produce the mailing labels necessary for him to mail his subsequent administrative appeals on this issue.

**B.**

Jones alleges that on January 11, 2010, Officer Doolin informed him that if he attempted to leave his mail in the mail room without the TRULINCS mailing labels, he would issue an

Incident Report. [*Id.*, p. 18, ¶ 60.] Despite Doolin's warning, Jones left the mail there without labels, and Doolin wrote an Incident Report charging Jones with Refusing to Obey an Order. [*See* R. 2-3, p. 25.]

In response to the Incident Report, Jones submitted a written statement arguing that compliance with the TRULINCS policy, Program Statement 5265.13, is voluntary. He further argued that because he did not consent to TRULINCS, he should not have been charged with a disciplinary infraction. On January 14, 2010, the Utilization Disciplinary Committee ("UDC") found Jones guilty of Refusing to Obey an Order, a BOP Code 307 Offense.[2] Jones was sanctioned with thirty days loss of phone privileges. Jones, however, did not forfeit any good-time credits ("GTC") as a result of the conviction. Jones alleges that when he attempted to file an administrative appeal of this conviction, the defendants prevented him from doing so by requiring him to affix TRULINCS mailing labels to his outgoing mail. [R. 2, p. 19, ¶ 62.]

## C.

Jones states that on August 17, 2009, he submitted various Inmate Requests to Staff asking USP-McCreary staff members to provide him with printed legal cases he needed in order to research a habeas petition. [R. 2, p. 9, ¶¶ 35-36.] Defendant Barron refused to supply Jones with the requested legal material, explaining that in order to access legal materials, he would have to use the Electronic Law Library ("ELL") via the TRULINCS system. Jones claims that

---

[2]

The various levels of BOP offenses are set forth in 28 C. F. R. § 541.13, Table 3. The most serious offenses ("Greatest Category") are listed in Code Nos.100-199; the next level of offenses ("High Category") are listed in Code Nos. 200- 299; the next level of offenses ("Moderate Category") are listed in Code Nos. 300-399; and the final and lowest level of offenses ("Low Moderate Category") are listed in Code Nos. 400-499.

because the TRULINCS system is unconstitutional and because he prefers not to use

TRULINCS, requiring him to use the system in order to access legal material hinders his ability

to represent himself and thus impairs his right of access to the courts.

Jones partially pursued an administrative remedy under 28 C.F.R. § 542.10-19. This

administrative remedy addressed not only his claim that TRULINCS infringed on his ability to

conduct legal research, but also his claim that the TRULINCS system illegally retains

information on private citizens without their consent. [*See* R. 2-1, pp. 11-13.] Jones demanded

that the BOP remove the TRULINCS registration requirement from the computer research

terminals; that the TRULINCS e-mail system be separated from other applications; and that his

e-mail correspondence be unrestricted. On September 4, 2009, Warden Eric D. Wilson denied

Jones's BP-9 Request for Administrative Remedy, stating:

> The Bureau of Prisons is authorized to monitor inmates' communication with
> persons in the community whether by written correspondence, telephone, visiting,
> or electronic messaging (e-mail). Such monitoring assists the BOP in operating
> safe, secure, and orderly institutions, as well as protecting the public from further
> criminal activity by inmates. The TRULINCS mailing label function furthers
> these interests by clearly identifying an inmate's written correspondents, similar to
> procedures already in place for monitoring inmate's telephone, visiting, and
> e-mail communication contacts. Additionally, the TRULINCS mailing label
> function ensures clearly printed and legible addresses for outgoing inmate mail
> which increases the accuracy and efficiency of mail handling.

[*Id.*, p. 11.]

In response to Jones's complaint about the manner in which inmates must access the ELL

and his request that the computer applications be separated, Wilson stated that the research

application and the e-mailing application are already separate features on the prison computers.

[*Id.*] Wilson distinguished the inmates' use of the computers for legal work from their use for

voluntary e-mail communication purposes. According to Wilson, ELL terminals are formatted only for legal work, and general workstations allow inmates to change their phone list and prepare BP-199s. Wilson noted that accessing the ELL through TRULINCS does require an inmate to enter his Register Number, PAC Number, and PIN Number, whereas previously, only a system/user generated password was required. [*Id*.]

Wilson explained that because the e-mailing feature is a separate, non-mandatory (optional) application, inmates must complete the BPA0934.052 Inmate Agreement for Participation in TRULINCS/Electronic Messaging Program Form if they wish to utilize the e-mail function. He stated that the message displayed when accessing the TRULINCS system is a generic message commonly shown when accessing any computer-based program. [*Id*.]

Jones filed a BP-10 appeal with the BOP Mid-Atlantic Regional Office ("MARO"). The MARO upheld Wilson's decision on the grounds set forth in Wilson's Response to the BP-9. [*Id*., p. 13.] Jones then filed a BP-11appeal of the MARO's decision to the BOP Central Office. On January 7, 2010, Jones received an acknowledgment of the BP-11 appeal [*id*., p. 14], but alleges that he has not received a response from the BOP Central Office. Thus, Jones deems the Central Office's failure to respond as an affirmation of the decisions of Wilson and the MARO.

**D.**

On June 24, 2008, long prior to the mail-room events of 2009-2010, the UDC convicted Jones of possessing various types of postal stamps, worth over $340.00, in violation of BOP Code 305. [*See* Incident Report/ Committee Action, R. 2-2, p. 4.] The punishment was confiscation of the stamps and the loss of thirty days of phone privileges, suspended pending 180 days of clear conduct. It appears that Jones lost no good-time credit as a result of the 2008

conviction.

Jones claims that as a result of this conviction, "mailing labels" were confiscated from him. However, the Incident Report/ Committee Action reveals that Jones was charged only with illegally possessing stamps and that only stamps were confiscated from him. Jones alleges that he attempted to file a BP-8 Request for Staff Resolution, but his Unit Team member told him that because he had already filed a BP-9 Request, he could not proceed. [R. 2, p. 5, ¶ 17.]

**E.**

On June 30, 2009, a woman Jones identifies as Linda Womack mailed him forty-four photographs and five pages displaying pictures of an unspecified nature along with correspondence. [R. 2, p. 7]. Jones claims that Officer S. Saylor returned the photographs and the five pages to Womack, allowing him to receive only the correspondence. [*Id.*, pp. 7-8.]

Jones pursued this claim through the BOP administrative remedy process. On August 12, 2009, Warden Wilson denied Jones's BP-9 Request for Administrative Remedy on the ground that the returned photographs constituted altered contraband as defined by BOP Program Statement 5800.10, *Mail Management Manual*, which prohibits "contraband, unauthorized material, negotiable instruments, money, etc."[3] [*Id.*, R. 2-1, p. 5.] On September 21, 2009, the

_____

[3]

According to Wilson:

> "An item received that cannot be searched or examined without destruction or alteration, shall be returned to sender. Since your photos were altered, they could not be examined without further destruction or alteration; therefore, they were rejected. Consequently, the current procedures for rejecting altered photos materials are within the guidelines established in the Program Statement."

MARO affirmed Wilson's decision.  [*Id.*, p. 7.]  On December 9, 2009, Jones received an acknowledgment of his BP-11 appeal.  [*Id.*, p. 8.]  Jones alleges that he has not received a response from the BOP Central Office, and he therefore deems that office's failure to respond as an affirmation of the decisions of both the MARO and Wilson.

### III.

### A.

Prisoners enjoy a First Amendment right to send and receive mail and to associate with others.  *See Procunier v. Martinez*, 416 U.S. 396, 408-409 (1974), *overruled in part on other grounds by Thornburgh v. Abbott*, 490 U.S. 401, 407 (1989); *Jones v. North Carolina Prisoners' Labor Union, Inc.*, 433 U.S. 119 (1977).  An inmate's exercise of constitutional rights is necessarily limited, however, "both from the fact of incarceration and from valid penological objectives-including deterrence of crime, rehabilitation of prisoners, and institutional security." *Pell v. Procunier*, 417 U.S. 817, 822-23 (1974); *see also*, *Jones*, 433 U.S. at 129.  In *Turner v. Safley*, 482 U.S. 78, 89 (1987), the Supreme Court held that "[w]hen a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests."  *See also O'Lone v. Estate of Shabazz*, 482 U.S. 342, 349 (1987); *Hines v. South Carolina Dept. of Corrections*, 148 F.3d 353, 358 (4th Cir. 1998).

The *Turner* court reviewed four factors that are relevant in determining the reasonableness of a challenged prison regulation.  "First, there must be a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it."  *Turner*, 482 U.S. at 89.  If not, the regulation is unconstitutional, and the other factors do not matter.  *Id*. at 89-90, 107 S. Ct. at 2262.

The remaining three factors are considerations that must be balanced together: (1) whether there are alternative means of exercising the right that remain open to prison inmates; (2) the impact that accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally; and (3) whether there are "ready alternatives" available "that fully accommodate the prisoner's rights at de minimis cost to valid penological interests." *Id.* at 90-91, 107 S. Ct. at 2262; *O'Lone* 482 U.S. at 350-52, 107 S. Ct. 2400; *see also Muhammad v. Pitcher*, 35 F.3d 1081, 1084 (6th Cir. 1984). The Court will apply the *Turner* factors to Jones's various challenges to the BOP's newly revised TRULINCS computer system.

To satisfy the First Amendment, there must be a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it. As noted, the TRULINCS procedures are set forth in the BOP Program Statement 5265.13. *See also* http://www.bop.gov/DataSource/execute/dsPolicyLoc. Using TRULINCS, an inmate is permitted to send or receive electronic, computer-based, written messages to and from family members and friends in the community who are included on the inmate's electronic message contact list. Program Statement 5265.13 articulates the following program objectives to be achieved by the implementation of the TRULINCS system:

> • To provide inmates with an alternative means of written communication with the public.
>
> • To provide the Bureau with a more efficient, cost-effective, and secure method of managing and monitoring inmate communication services.
>
> • To reduce the opportunities for illegal drugs or contraband to be introduced into [BOP] facilities through inmate mail.

[*See* PS 5265.13, Attachment to Complaint, R. 2-2, p. 11.]

Clearly, increasing and improving the processing of inmate mail, ensuring that security is enhanced by reducing means of introducing contraband, and allowing inmates to avail themselves of e-mail communication with authorized private citizens constitute legitimate government interests. As to whether there exists a rational relationship between these legitimate government interests and the means by which they are achieved, *i.e.* compliance with the TRULINCS system, at least one district court has recently said "yes," and this Court agrees.

In *Dunlea v. Federal Bureau of Prisons*, No. 3: 10-CV-214, 2010 WL 1727838 (D. Conn. April 26, 2010), prisoner Windy Dunlea challenged the BOP's and the Warden of FCI-Danbury's decisions to deny her permission to use TRULINCS to send electronic messages to her family and friends. At the same time, she continued to be able to use TRULINCS to enter telephone numbers, print out mailing labels, transfer funds to purchase printing minutes, access the LexisNexis database, and review her commissary transactions. In August of 2009, Dunlea asked FCI-Danbury Warden Zickefoose to reconsider the decision prohibiting her from using TRULINCS to email family and friends. Warden Zickefoose denied the request. *Id.* at *1.

During the administrative remedy process, prison officials informed Dunlea that the decision to prohibit her use of TRULINCS to e-mail others was the result of her use of a computer in the commission of the crimes for which she was serving her sentence at FCI Danbury. *Id.* Dunlea complained that the decision was discriminatory and unfair, and she sought a court order directing FCI-Danbury officials to permit her to use TRULINCS to send e-mails. *Id.*

The *Dunlea* court stated that the use of TRULINCS is a privilege and that the BOP has

absolute discretion in determining whether to limit or deny an inmate the use of TRULINCS according to Program Statement 5265.13(2). *Id*. "When the BOP determines that an inmate's use of the electronic messaging system would threaten the safety or security of the public or a prison facility or interfere with the orderly operation of the prison facility, the inmate will not be permitted to use TRULINCS." *Id*. *Dunlea* cited as authority *Glick v. Montana Dept. of Corrections*, No. CV 07-41-H-DWM, 2009 WL 2959730, at *2 (D. Mont. May 7, 2009), in holding that prisoners have no constitutionally protected right to send and receive electronic messages via computer or other electronic device. *See Dunlea*, 2010 WL 1727838, at *2.

In the instant case, Section 7 of USP-McCreary's July 24, 2009 Institutional Supplement to PS 5265.13 states: "The use of TRULINCS is a privilege; therefore, the Warden or authorized representative may limit or deny the privilege of a particular inmate." [*See* R. 2-2, p. 21.] The fact that e-mail correspondence is a privilege, not a constitutionally protected right, indicates that *Turner* factor number two, whether there are alternative means by which inmates may exercise the right, is simply not applicable. As *Dunlea* points out, "the BOP and Warden . . . have complete discretion in determining whether an inmate may use TRULINCS." *Dunlea*, 2010 WL 1727838, at *4.

Under the third *Turner* factor, the Court must consider the impact that accommodation of the asserted constitutional right will have on guards and other inmates and on the allocation of prison resources generally. The Court finds that the impact on prison administrators would be substantial. Allowing Jones to send unmonitored e-mails and communications would cause a severe hardship on already scant prison resources dedicated to ensuring that security is maintained at all levels. As for the fourth *Turner* factor, the Court can identify no "ready

14

alternatives" available "that fully accommodate the prisoner's rights at *de minimis* cost to valid

penological interests."

Jones's assertion that compliance with TRULINCS is purely voluntary, and that his

refusal to participate in the system should not have subjected him to adverse consequences, is

overly broad and erroneous.  Jones relies only on bits and pieces of Section 2 of Program

Statement 5265.13, entitled "Authority," which reads in its entirety:

> **By participating in the TRULINCS program, inmates, and the persons in the community with whom they correspond, voluntarily consent to having all incoming and outgoing electronic messages, including transactional data, message contents, and other activities, monitored and retained by Bureau staff**.  This authority includes rejecting individual messages sent to or from inmates using TRULINCS that jeopardize the above-mentioned interests.
>
> **An inmate's participation in TRULINCS is conditioned on his/her notice, acknowledgment, and voluntary consent to the Warden's authority, as indicated above**.  Each inmate's notice, acknowledgment, and voluntary consent must be documented on the Inmate Agreement for Participation in TRULINCS Electronic Messaging Program Form (BP-0934).  As a reminder to inmates, a warning banner appears each time an inmate participant accesses the system, indicating his/her consent to monitoring.

[R. 2-2, pp. 11-12 (emphasis added).]

As Warden Wilson explained in one of his responses to Jones's administrative remedies,

the *only* optional aspect of TRULINCS is the inmate's decision to use e-mail communication.

An inmate may elect not to utilize e-mail communications, which again is a privilege granted to

federal inmates, not a right.  If an inmate "opts out" of the privilege of using e-mail, the inmate

may still communicate with outside persons by way of United States mail and telephone.  If the

inmate opts to use e-mail, he must do so under the Warden's authority and subject to the BOP's

terms as set forth in Section 2 of Program Statement 5265.13.  This  includes the reasonable

security requirement that e-mail with outside persons is subject to monitoring by BOP staff.

The same reasons underlying the BOP's policy of restricting or monitoring e-mail communications apply to its policy that inmates must use TRULINCS in order to obtain legal material. Requiring inmates to sign on using TRULINCS prior to accessing legal material is rationally related to the BOP's interests in ensuring that the computers are not abused and retaining control and authority over inmates' use of the computer system.

## B.

There is nothing in Program Statement 5265.13 indicating that the TRULINCS provision requiring that mailing labels be affixed to outgoing mail is optional in the absence of exceptional circumstances. Program Statement 5265.13 states in Section 4(c):

> **Outgoing Mail Labels**. Ordinarily, inmates are required to place a TRULINCS-generated mailing label on all outgoing postal mail. The Warden may exempt inmates from this requirement if he/she determines that an inmate has a physical or mental incapacity, or other extraordinary circumstances that prevents him/her from using the TRULINCS terminal, or the inmate poses special security concerns prohibiting access to TRULINCS terminals.

[R. 2-2, p. 14.]

From the record, it does not appear that any of these exceptional circumstances apply to Jones. Thus, Jones did not have the "option" of not affixing mailing labels to his outgoing mail. Program Statement 5265.13 plainly states, and Warden Wilson repeatedly explained to Jones, that the goal of requiring mailing labels is to increase mail delivery and efficiency and minimize errors caused by poor penmanship. As stated by the Sixth Circuit, "Outgoing mail . . . may be regulated according to regulations or practices that "further an important or substantial governmental interest unrelated to the suppression of expression," and that extend no further

"than is necessary or essential to the protection of the particular governmental interest involved."

*Martucci v. Johnson*, 944 F.2d 291, 295-96 (6th Cir. 1991) (citations omitted).

In *Robinson v. Federal Bureau of Prisons*, No. 09-2215, 2009 WL 4405573 (D.D.C. Nov. 23, 2009), the district court addressed a prisoner's challenge to the constitutionality of requiring inmates to affix TRULINCS mailing labels to outgoing mail. *Id*. at *1. The opinion is extremely brief. The Court merely stated that Robinson had already unsuccessfully raised such a claim challenging the TRULINCS mailing label requirement in a prior case, *Robinson v. Coughlin*, Civ. Action No. 209-089 (S.D. Ga.); that the Georgia court had dismissed the claim as un-meritorious; and that the Georgia decision could not be attacked under *res judicata* principles. *See Robinson v. Federal Bureau of Prisons*, 2009 WL 4405573, at *1. Although this Court could not access the Georgia *Robinson* decision via the Public Access to Court Electronic Records website, the District of Columbia decision strongly indicates that a TRULINCS mailing label challenge identical to Jones's has been dismissed on the merits in at least one other federal court.

Additionally, courts have upheld other restrictions on inmate mail procedures. In *United States v. Stotts*, 925 F.2d 83 (4th Cir. 1991), the court upheld the BOP's requirement that a specific attorney be identified as the sender, finding that the regulation was reasonably related to the security interests of prison administrators. Specifically, in the case Stotts sought to have all mail from any attorney's office treated as special mail. The Fourth Circuit, however, found that "[r]equiring the name of the specific person claiming an attorney-client privilege . . . makes screening quicker and more accurate. In order to verify in advance of delivery that a given letter is genuine, a prison official need not call a law firm and try to ascertain which of many attorneys

may be working on a case, but can simply and quickly speak with the named lawyer." *Id*. at 87. The court went on to note that compliance with the regulation is neither difficult nor expensive and guarantees the treatment of the correspondence as special mail. *Id*. A system of treating all mail that comes from any legal entity as special mail was rejected by the court as unduly burdensome. *Id*.

This Court can attest to the difficulties and delays that can result from trying to read incomprehensible, scribbled, handwritten submissions from *pro se* litigants. Without question, requiring prisoners to print labels would expedite mailing procedures, which is a valid governmental interest. The requirement that printed mailing labels be used on outgoing mail bears a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it, thus satisfying the first factor of the *Turner* test. This is especially so when prisoners are attempting to mail documents to courts.

In Jones's case, no alternative to the requirement of printed mailing label exists, because the goal is the use of *printed*, not *handwritten* mailing labels, so the second *Turner* fact weighs in favor of the BOP on the issue. Excusing some inmates from using printed mailing labels would have a substantial impact on guards and other inmates, and on the allocation of prison resources generally, so the third *Turner* factor must also be resolved in favor of the BOP.

As the Supreme Court has noted, "[T]he problems that arise in the day-to-day operation of a corrections facility are not susceptible of easy solutions. Prison officials therefore should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Bell v. Wolfish*, 441 U.S. 520, 562 (1979). In summary, Jones's defiance of the

printed mailing label requirement on First Amendment grounds was an unreasonable refusal to follow a valid BOP policy. His failure to properly exhaust his claims on this issue was the result of his unjustified refusal to print mailing labels needed to mail the administrative appeals. While the failure to exhaust would typically result in the dismissal of a condition of confinement claim without prejudice, 42 U.S.C. § 1997e, the Court has authority to dismiss a patently frivolous claim with prejudice, even absent exhaustion. 42 U.S.C. § 1997e(c)(1). The Court therefore dismisses Jones's First Amendment claims, challenging all aspects of the TRULINCS policy, Program Statement 5265.13, with prejudice.

### C.

The claims for damages against Warden Wilson and BOP Director Harley Lappin must be dismissed for another reason. Jones has not established that either Warden Wilson or Director Lappin were personally involved in any of the mail-room activity or disciplinary actions he complains about, other than merely denying administrative grievances. Under the facts as alleged, the only basis upon which liability could be imposed against Wilson, the head administrator of USP-McCreary, would be the doctrine of *respondeat superior*.

*Respondeat superior*, however, cannot form the basis of liability in a *Bivens* action. *See Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 691 (1978); *Kesterson v. Luttrell*, 172 F.3d 48 (Table), 1998 WL 894843 (6th Cir. 1998); *Jones v. City of Memphis*, 586 F.2d 622, 625 (6th Cir. 1978). In order to find supervisors liable, a plaintiff must allege that the supervisor condoned, encouraged, or participated in the alleged misconduct. *Birrell v. Brown*, 867 F.2d 956, 959 (6th Cir. 1989); *Leach v. Shelby Co. Sheriff*, 891 F.2d 1241 (6th Cir. 1989), *cert*. d*enied*, 110 S. Ct. 2173 (1990). Jones did not make such allegations in his Complaint.

The fact that Wilson, and eventually Lappin, denied Jones's administrative remedies does not provide a basis for imposing liability. *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999), holds that officials whose only action involve[s] the denial of administrative grievances, or the failure to act, are not liable under § 1983. Accordingly, no liability could be imposed against these two defendants even if Jones's First Amendment claims had merit.

**D.**

Jones's challenges to his two disciplinary convictions, in June 2008 for the illegal possession of postage stamps and in January 2010 for refusing to obey an order, suffer from two deficiencies. First, such challenges must be brought by way of a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241, not by way of a *Bivens* civil rights action. Jones cannot bring a *Bivens* action on these charges until his disciplinary convictions have been reversed, as success in a *Bivens* action would necessarily imply the invalidity of his conviction. *See Edwards v. Balisok*, 520 U.S. 641, 646 (1997) (holding that a claim that "necessarily impl[ies] the invalidity of the punishment imposed . . . is not cognizable under § 1983"); *Lanier v. Bryant*, 332 F.3d 999, 1005 (6th Cir. 2003) (applying *Balisok* to *Bivens* actions); and *Johnston v. Sanders*, 86 Fed.App'x 909, 910 (6th Cir. 2004) (prisoner could not challenge a disciplinary proceeding resulting in a loss of good-time credits in a *Bivens* action because his disciplinary conviction had not been reversed).

Second, it is clear from the disciplinary convictions he attached to his Complaint that Jones lost no good-time credit as a result of either conviction. Rather, he lost thirty days of telephone privileges. Thus, Jones has not alleged that the sanctions imposed extended the duration of his sentence or caused an atypical and significant hardship in relation to the ordinary incidents of prison life, which is the standard for assessing whether a prisoner has been deprived

of a constitutional right. *Sandin v. Conner*, 515 U.S. 472, 484-86 (1995). *See also Jones v. Baker*, 155 F.3d 810, 812 (6th Cir. 1998); *Mackey v. Dyke*, 111 F.3d 460, 463 (6th Cir. 1997). Accordingly, Jones's Fifth Amendment due process claim challenging his disciplinary conviction for possessing illegal stamps will be dismissed with prejudice.

If Jones intends to challenge the confiscation of personal property consisting of $348.00 worth of stamps, he must pursue another avenue. The BOP has the authority under 31 U.S.C. § 3723(a)(1) to settle "claims[s] for not more than $1,000 for damage to, or loss of, privately owned property that ... is caused by the negligence of an officer or employee of the United States Government acting within the scope of employment." Jones is so advised.

### E.

As discussed in preceding passages, Jones admits he did not administratively exhaust his claims relating to the photographs returned to Linda Womack on June 30, 2009. He blames this failure on his decision to disregard and ignore the BOP's policy that TRULINCS mailing labels must be applied to any outgoing mail, including administrative appeals. As discussed, although Jones claimed that he had a First Amendment right to refuse to comply with the TRULINCS mailing label requirement, the Court has now determined that Jones did not have such a right. Jones's refusal to affix the mailing labels was not warranted, and his failure to perfect his administrative appeals was his own fault, not the fault of BOP staff.

Title 42 U.S.C. §1997e(a) was amended to require state and federal prisoners bringing actions concerning prison conditions and any other incidents of prison life to exhaust all available administrative remedies before suing in federal court. *See Porter v. Nussle*, 534 U.S. 122 S. Ct. 983 (2002); *Lavista v. Beeler*, 195 F.3d 254, 256 (6th Cir. 1999). The Supreme Court

has held that in order to satisfy the requirement of administrative exhaustion, those remedies must be exhausted properly and within the time frames required by the remedy process. *Woodford v. Ngo*, 548 U.S. 81, 126 S. Ct. 2378, 2387-88 (2006). The exhaustion requirement ensures not only that the agency be given the opportunity to review its conclusions short of litigation, but also that the district court has a complete record upon which to review the agency's final action. *See Brice v. Day*, 604 F.2d 664 (10th Cir. 1979), *cert. denied*, 444 U.S. 1086 (1980). "Proper exhaustion often results in the creation of an administrative record that is helpful to the court." *Barney v. Correctional Medical Services, Inc.*, 08-CV-00694, 2009 WL 3711612, at *12 (W.D. Mich. Nov. 3, 2009).

Because Jones admits on the face of his complaint that he has not exhausted his claim regarding the photographs returned on June 30, 2009, *sua sponte* dismissal of this claim is warranted. *See Smith v. Lief*, No. 10-8, 2010 WL 411134, at *4 (E.D. Ky. Jan. 27, 2010); *Gunn v. Kentucky Depart. Of Corrections*, No. 07-103, 2008 WL 2002259, at *4 (W.D. Ky. May 7, 2008) (where it was clear from face of the complaint that the prisoner had filed an untimely grievance, *sua sponte* dismissal of the complaint without prejudice was warranted); *Spaulding v. Oakland County Jail Medical Staff*, No. 07-12727, 2007 WL 2336216, at *3 (E.D. Mich. Aug. 15, 2007) (dismissing complaint on initial screening for failure to exhaust because it was clear from the face of the complaint that the prisoner had not exhausted his administrative remedies prior to filing suit).

## IV.

Accordingly, **IT IS ORDERED** as follows:

(1) Patrick A. Jones's First Amendment claims challenging all aspects of the Bureau or Prisons Program Statement 5265.13 (mailing label for outgoing mail requirement; legal research access; and e-mail monitoring) are **DISMISSED WITH PREJUDICE.**

(2) Jones's First and/or Fifth Amendment claims challenging two disciplinary convictions, (a) in June 2008 for the illegal possession of postage stamps, and (b) in January 2010 for refusing to obey an order, are **DISMISSED WITH PREJUDICE.**

(3) Jones' First and/or Fifth Amendment claim challenging the confiscation of photographs from his incoming mail on June 30, 3009, is **DISMISSED WITHOUT PREJUDICE.**

(4) This action is **DISMISSED** from the docket of the Court.

(5) Judgment shall be entered contemporaneously with this Memorandum Opinion and Order in favor of the named defendants.

(6) The Clerk of this Court is directed to forward a copy of this Memorandum Opinion and Order to the Clerk of the Court of Appeals for the Sixth Circuit, referencing Case No. 10-5425.

This the 2nd day of June, 2010.

**Signed By:**

*Gregory F. Van Tatenhove*

**United States District Judge**